Our next case is Huawei Technologies v. Catherine Vidal, 2022-1553. Mr. Courtney. Thank you, Judge Lurie. If it pleases the Court, I'd like to begin with what we view as the primary error in the Board's decision to misappeal, and that's its failure to apply the legal guardrails that this Court and the Supreme Court have put in place to guide the reason-to-combine analysis and avoid the inherent risk of corruption by bias, and particularly hindsight bias. There are two aspects of that that we think the Board's decision went afoul of. The first is the instruction that the reason-to-combine, if it's going to support an obviousness determination, must be specific, and it must specifically map the theory of obviousness that's been presented by the challenger. It must start at the challenger's starting point, which is in this case the carry device, and it must be supported by specific evidence about what is it about that carry device that would cause an ordinary artisan prior to the claimed invention not just to make modifications to carry in a general way, but to make specific modifications that lead all the way to an embodiment of the claims. And we think the Board erred in that respect. Its reason-to-combine analysis is highly generic, and there's nothing about it that is linked to the underlying starting point, the theory that was being presented. And then second, in a related error, the Board also failed to apply the guardrails, emphasizing the Board's role as an adjudicator of evidence and not a filler of gaps. This is an adversarial proceeding. The Board's role is not to rescue the petitioner from unforced errors. The Board's role is not to supplement the record. The Board has expertise. It may apply it in interpreting the record, but it may not use it as a substitute for the record. So I'll start there. I'd like to come to the claim construction issue. Your argument is that the Board legally erred in its decision on motivation-to-combine, that it was legal error. We would say that its determination of obviousness, which is a legal determination, was wrong because its inquiry into the underlying facts applied the wrong legal framework. Okay. Well, I agree with that. Now, aren't you putting yourself in a substantial evidence situation? Respectfully, I don't think so. I think when this Court reviews the Board's legal framework, the record shows that the Board did not apply the correct legal framework. The underlying conclusion, if the Board applies the correct legal framework, then we review for substantial evidence. I say we. This Court reviews for substantial evidence. However, when there's an error in the underlying framing that the Board has applied, there's no deference accorded to that. That would be de novo review. I think correction reversal is required here under either standard of review. I want to emphasize that. But I do believe that when we look to see whether the Board's analysis comports with active video, comports with TQ-Delta, comports with KSR, that is a de novo review. And active video, I think, underlines that. In active video, just like in this case, we see a challenger whose theory of the reason-to-combine is highly generic. In that case— You say that, but it struck me in reading the materials here that these two prior art references that are at issue here are extremely similar. They come from very closely analogous art, and that it doesn't take a great leap from one area of art to another completely different area of law by saying, well, there's a general motivation to combine. When you've got two prior art references that are so similar, it looks to me as I read what the Board has done, and you can correct me if you think this is a misapprehension, is to take these two references and say one of them leads right up to a certain point and the other finishes the job. Why isn't that a very specific use of the motivation to combine? A couple of responses. I think first, if we had a record where the evidence indicated that these were close, we'd be having a different conversation. However, we have a record— Do you think these are not close references? Respectfully, I think the evidence teaches that they're not close references. We have Dr. Davis's declaration to the Board, substantially unrebutted by the petitioner here, explained how the Cary reference is in its core conception a device located at the center of a network whose primary configuration is to avoid mixing of material on different VLANs and whose main job is to allow a customer to select whatever VLAN identifier the customer might prefer without compromising the insurance that data the customer wants to keep in a single VLAN will not mix with data from other customers or other VLANs. That was Cary's core operating principle. Dr. Davis described that, and there was no rebuttal. Similarly, Dr. Davis described how— Both of the prior references deal with converting and transferring communications over VLANs through an input port, through a switch, through an output port, in a way that would be able to be done at Level 2 without having to go to Level 3. That seems like we're talking about the same art here. Unless that art is your universe, there's nothing else out there. Two responses. I think I do understand the point that's being made. I will say that neither of these references actually connected two VLANs to one another. That's important to recognize. In both of these references, if a customer said, I'm defining VLAN 1 as these communications and VLAN 2 as these communications, neither reference provided a facility to cross from one to the other. The combination that's been proposed by the petitioner here would enable that, but neither reference did. That's one thing I'd like to isolate and emphasize. I would also emphasize that network infrastructure matters in this field. The goals of Cary, which Cary itself described— Ms. Cary said, my goal is to prevent mixing of these materials, and my other goal is to prevent the flooding problem, which is what happens. It's a natural part of Layer 2 networking. When a message doesn't have a known destination, it gets flooded out to all potential recipients. Ms. Cary said, my design is such there is no risk of a customer who has data on their network, on their VLAN, that the flooding process causes it to reach someone that the customer doesn't want. Ms. Cary specifically identified that as a design criteria. The combination proposed by the petitioner here really undermines that. The flooding problem comes back to the fore in a major way. Again, Dr. Davis described that, and again, the petitioner did not submit rebuttal evidence. We had some conversation earlier today, Judge Bryson, about carrying a burden where evidence is believed and unrebutted. Now, the record here shows evidence of technical incompatibility between the two references. It was not rebutted. We know that. But the board did not make any findings that Dr. Davis was not credible. It did not make any findings that Dr. Davis applied the wrong standards of his field. The board simply reasoned in, I think, a conclusory and unsupported way that the concerns Dr. Davis had raised were somehow not real or not sufficient to defeat the proposed combination, but that is not the board's role. The board's role is to weigh evidence in a proceeding such as this. It sounds like you're perhaps not quite saying, but coming close to saying, that in order for the petitioner to be able to make its case, it has to introduce rebuttal evidence in the form of, say, Dr. Bhattacharjee coming in with a reply report saying none of what Mr. Davis says is true. I think on this record that is what could and should have happened, and it's not the board's role to rescue the petitioner. However, another path the petitioner has is in supporting evidence to anticipate the objections that its adversary might bring up and for its initial declaration to say a person of skill would have traversed those or would not have viewed them as undermining the motivation to combine references, and here's why. There is that opportunity that the petitioner has. They get two bites at the apple. They get the petition, and they get the reply. In this one, the petitioner forwent the opportunity of reply evidence, and then the board, weak to contend on this record, said, we're going to forgive the petitioner that error and supplement the board's expertise to fill in that gap, and that's improper. I do think active video and TQ Delta are germane here. Active video was a case involving a cable system and the provision of interactive services that were going to be provided over the cable TV system generated at the head end, not at the fox. All those components were known in the art. That wasn't disputed, and the expert, the challenger, came in with a theory that combining these devices to reach the challenged claims would have added features that customers liked. It would have been efficient. It would have generally increased value, and this court held as a matter of law on an affirmed JMAL that that was insufficient, that it was excessively conclusory, and that a challenger cannot carry their burden on the reason to combine merely by assessing that making the proposed combination would have made things better, and in fact the desire to make things better is often the cornerstone of invention. That's why we require a specific particularized analysis that takes the starting point the challenger has identified. Here it's carry, operating in the center of a network, expressly dedicated to not crossing material from one VLAN to another or one customer network to another. The burden was on the petitioner here to explain why a skilled artisan, starting from that starting point, would have been driven towards a design that is radically different. It requires a fairly extensive conversion of carry into something different so as to practice the claim, and we contend that the board simply did not accomplish that. My colleague from the director's office, I think as Judge Bryson did, raises points of, well, this is analogous art, right? But the generic motivation to combine, but those are not sufficient. They raise points that some of this technology was well-known or had a reasonable expectation of success. Those are all collateral to the underlying inquiry of why would a person of skill, starting with carry, which has such a clear design focus, have reached out and said, I'm going to convert carry into something different than it is by adding this facility for translating the output VLAN ID. That's not a facility that carry had. It's not a facility that carry needed. And we submit that the board did not identify any reason why carry would benefit from that redesign, other than the hindsight motivation practicing the claims. With my remaining time, I'd like to talk briefly about the claim construction error, because I think it's equally serious and I think it also requires reversal. This is another area where the board extended its hand to correct what may have been an unforced error by the petitioner, but it was the petitioner's responsibility to put its arguments in its petition. It's unambiguous that the petition relies for limitation 1.3 solely on the carry reference. We would contend that there's no reasonable dispute that had the board adopted the construction Huawei proposed in this case, there's no way the petitioner could have prevailed. Limitation 1.3 requires a VSI under Huawei's proposed construction, which, by the way, was the construction that the petitioner had itself proposed in district court. A VSI would have required both a doublet of VLAN ID and input port and output VLAN ID and output port. Carry has nothing like that. The director's contention that this would not have affected the outcome we think is unsupportable. The idea that a petitioner could point to a single reference in its petition and then be unable to find the limitation as construed by its adversary's construction in that reference, the idea that it doesn't make a difference, we would respectfully submit, is unjustifiable. I think the correct action here is reversal. This petition can't be rewritten. The board lacks that power. It may have been an unforced error by the petitioner, but it is the petitioner's responsibility. Now, the petition does refer to Carry as referencing the output port. What's your position with respect to why Carry doesn't satisfy at least the general parameters of the 1.3? Certainly. Carry has no facility for mapping based on output VLAN ID. The VLAN ID is the same both on the input side and on the output side. But you did. It was anticipated, I suppose. It's easy to see that hypothetically, right? Okay. But it didn't have that. Yeah. What's your sense, though? I'm sort of hard-pressed to see. There's no doublet comprising an output VLAN ID in Carry's system. And you think there actually has to be a doublet in Carry in order to satisfy 1.3? Under Huawei's proposed construction, that was expressly a requirement. And by the way, that's the construction that the petitioner had initially proposed to district court. It was on notice of that construction. And we don't think there was a basis for the board to rescue the petitioner in the way that it did. We're well into our rebuttal time. We'll save it if you wish. Thank you, Judge Lurie. Mr. Heckman. Good morning, Your Honors. May it please the Court. The main issue in dispute on this appeal is whether substantial evidence supports the finding that there was a motivation to combine Hawthorne's and Carry's teachings. And I'd like to review three main areas where that substantial evidence exists in the record. First is the Hawthorne reference itself, which identifies both the problem with Carry's system and the solution to that shortcoming. So first at appendix page 1342, paragraph 9. Hawthorne had predated Carry, so it seems the feel in the briefs is that Hawthorne was an improvement on Carry, but it's the other way around, I suppose. Yes, the timing is a little quirky, but nevertheless, if we're looking at what would have been within the knowledge of a person of ordinary skill at the art at the critical time for this patent, that's what the person of ordinary skill in the art would have known. And so Hawthorne at page 1346, paragraph 59, says that the way that you deal with the shortcoming that was present in Carry is to translate the VLAN IDs. So you get unique VLAN IDs upon output, and therefore one does not have to maintain separate ports to do that. Second area in the record where substantial evidence exists is Dr. Bhattacharjee's testimony, and in his declaration that was submitted with the IPR petition, Dr. Bhattacharjee pointed to these areas of Hawthorne that I just reviewed, appendix page 1172, paragraphs 120 to 121. And Dr. Bhattacharjee said that Carry falls short of solving the problematic situation of overlapping VLAN IDs when the same output port must be used. And he further cited Hawthorne for identifying that problem and for providing the solution. Now, Huawei has maintained that its experts, Dr. Davis's testimony was unrebutted by Dr. Bhattacharjee, but I think there's a difference between declining to provide a rebuttal report versus just not rebutting testimony. Dr. Bhattacharjee did submit an initial opening expert report and declaration. He was deposed by Huawei's counsel. He provided testimony that countered what Huawei's experts said. And so there is rebuttal testimony in the record, and a witness doesn't bear a burden to offer additional reports to the board if it's not necessary. Finally, we know that these, as Judge Bryson has pointed out this morning, Carry and Hawthorne come from very, very similar fields. This is Layer 2 network switching. They both practice the 802.1 standard. This is about as close as anyone could get. And so KSR says that when the problem is known and when the solution is known, that that is a basis for finding obviousness. And that's exactly what we have here. So with that, if the court has any- Could you talk about the loosely framed, I guess, the claim construction issue that Mr. Quarton you referred to? Yes, and I agree with Judge Bryson what you said. You pointed out the IPR petition did cite Carry for both teaching steps 1.3 and 1.4. And I would point the court to appendix pages 151 to 152, which is the IPR petition. And on page 151, this is the first half of the page is the end of the discussion that maps Carry on to step 1.3 and then continues on to 1.4. And in the top paragraph, we can see that Carry is being mapped on to step 1.3. And specifically to output side issues when the petition argues that Carry also describes that the output of forwarding database 910 may be an output port. Accordingly, the virtual switch identifier identifies a virtual switching instance as claimed. Then going down the page to the discussion of step 1.4, the petition further argues that first, Carry teaches that after a virtual switch identifier has been determined for a received frame, an output port is determined based on the virtual switch ID in combination with the MAC destination address. And then it goes on to quote a passage of Carry itself. You know, there's no question that in this petition that Carry is being relied on for teachings for both steps 1.3 and 1.4. These are two steps in this claim that are highly interrelated. They're bridging the output side to the input side of a switch to the output side. This is what was argued even before the district court ruled on clean construction and kind of added this additional bridging or binding language. So, you know, I think even putting aside that the court hadn't even ruled on that at this time, this petition still gives the full discussion of Carry in the context that Huawei is saying should have been done. And the parties had an opportunity and did, in fact, litigate it before the board. Anything further, counsel? I have nothing further unless the court does. Thank you very much. Mr. Courtney has a minute and a half to rebuttal. I'll take it. Thank you. I'd like to begin where my counterpart from the director's office just left off. And respectfully, I think that analysis is inverted. The pages that my counterpart directed the court to, the paragraph on paragraph 151, immediately above the bolded text, unambiguously says that the prior art, as taught by Carry, discloses limitation 1.3. And Huawei's proposed construction of 1.3, a construction that the petitioner here knew about because it was the petitioner's own construction from district court, that's at appendix 3413, would have required that a VSI comprise input port, input VLAN, output port, output VLAN. Those four elements. Carry does not have those four elements. It simply doesn't. And I actually didn't hear my counterpart from the director's office say differently. This absolutely would have been a dispositive claim construction issue. The board should have construed the claim. It should not have attempted to duck this issue in the way it did in reversals to correct remedy. Also, the concept was ventured that Dr. Bhattacharya maybe somehow pre-rebutted the allegations, not sorry, the opinions that were given by Dr. Davis to the board, either in his deposition testimony or in his opening declaration. We describe in our briefs, and I would challenge the court to find it, there is no such discussion of these issues in any of those submissions from Dr. Bhattacharya. He does not discuss why his view of combining carry and Hawthorne doesn't undermine carry's core principle of operation. And he doesn't discuss why petitioner's proposal to combine in this way doesn't undermine carry's invocation against flooding packets across multiple networks. Again, these are things he might have addressed in a rebuttal declaration, but the election was made for him not to present that. I apologize for going into my red time. If there's no further questions. Thank you. Case is submitted.